IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

JOE WAYNE CASTILLO, JR., *et al.*,

Plaintiffs,

v.

CITY OF AMARILLO, TEXAS, *et al.*,

Defendants.

2:25-CV-150-Z

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim, filed February 23, 2026 ("Motion to Dismiss"). ECF No. 45. Plaintiffs responded in partial opposition on March 16, 2026. ECF No. 47. Defendants replied in support on March 30, 2026. ECF No. 50. The Motion to Dismiss is now ripe.

The Defendant Officers are entitled to qualified immunity for the claims against them. Accordingly, the Motion to Dismiss (ECF No. 45) is **GRANTED**. Plaintiffs' request for leave to further amend their Complaint is **DENIED**. This case is **DISMISSED**.

**BACKGROUND**[1]

Defendant Officer Bustos ("Bustos") is a police officer with the Amarillo Police Department. On July 29, 2023, Bustos initiated a traffic stop on a vehicle for a mismatched license plate. The vehicle exited the main street onto a less busy side street and pulled over to the curb. Bustos stopped several lengths behind the stopped vehicle.

Three individuals were inside the stopped vehicle: the driver, Isidra Castillo ("Castillo") in the front passenger seat, and Andrew Norton ("Norton") in the right rear passenger seat (behind Castillo). Officer Bustos exited his patrol vehicle and approached the

[1] All facts in this section are taken from Plaintiffs' Second Amended Complaint, ECF No. 41, unless otherwise noted.

stopped car. He collected information from all three passengers, including their names. Norton, the passenger in the rear passenger seat, falsely identified himself as "Kayden Cortez."

Defendant Bustos returned to his patrol vehicle and ran checks on the passengers. These checks revealed that Norton's name was not actually Kayden Cortez. Bustos approached the stopped vehicle again, this time with a second officer, and asked the driver to exit the vehicle. The driver complied. The officers questioned the driver about the man in in the rear passenger seat. The driver identified him as a friend he knew as "Anthony."

While Bustos was questioning the driver, Defendant Officer Nevarez ("Nevarez") arrived on the scene. Nevarez and another officer spoke with Castillo through the driver's side window. Nevarez then walked around the vehicle to the passenger side to speak with Norton.

Bustos joined Nevarez, standing next to him outside of the rear passenger door. Bustos asked Norton through the open window "what's your real name bud?" Norton was evasive but eventually identified himself as Andrew Norton. Bustos mentioned that Norton appeared nervous. Norton said he did not believe he had any outstanding warrants, but he *possibly* did. Bustos then asked Norton to exit the vehicle.

As Norton exited, he immediately reached under his shirt and drew a handgun. He pointed the handgun at Bustos and Nevarez, with his finger on the trigger. Bustos and Nevarez drew their duty weapons and issued commands for Norton to "drop the weapon." Norton did not comply. Nevarez moved back to the rear of the vehicle, while Bustos shifted slightly to his left. Two other officers ("Stephenson" and "Throgmorten") were positioned on the other side of the vehicle. The relative positioning of the officers, Norton, and Catillo just after Norton drew his gun is shown in the diagram provided by Plaintiffs below:




ECF No. 41 at 14.

Norton refused to drop his firearm and continued aiming it at the officers. Bustos and Nevarez then fired at Norton, Bustos ten times and Nevarez thirteen. The officers' gunshots struck and killed both Norton and Castillo. Castillo remained seated in the passenger seat during this encounter.

Castillo's four surviving children and mother filed this suit on July 7, 2025. ECF No. 1. In their Second Amended Complaint they allege claims against the City of Amarillo, Officers Nevarez and Bustos, and other "Unknown Police Officers" and "Unknown Entities." They bring constitutional "excessive force" claims, as well as state law claims for wrongful death and intentional infliction of emotional distress. Defendants filed a Motion to Dismiss the Second Amended Complaint. ECF No. 45.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"In ruling on a motion to dismiss, a court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 217 (5th Cir. 2009) (internal marks omitted). When considering a qualified immunity defense raised in a motion to dismiss, the Court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

## ANALYSIS

### I. Motion to Seal

Plaintiffs filed a Motion to Seal exhibits in support of their position on the Motion to Dismiss. ECF No. 48. Plaintiffs' Motion asks the Court to seal body camera footage from Officers Throgmorton and Casey and an expert report. ECF Nos. 48, 49. The Court must consider whether this evidence can be considered at this stage, and if so whether it can be filed under seal.[2]

[2] Plaintiffs only argument in favor of sealing the exhibits is they are subject to the protective order. ECF No. 48 at 2. That is insufficient. The standard for sealing documents filed on the docket is much more exacting than the standard for protecting documents produced in discovery. *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418–19 (5th Cir. 2021). In the interest of bringing this case to an efficient resolution, the Court will consider and decide in this Memorandum Opinion and Order whether the unopposed sealing is appropriate.

*A. Expert Report*

The Court declines to rule on Plaintiffs' request to seal the expert report, because the Court cannot consider the report at this stage. A Court ruling on a motion to dismiss may not consider "matters outside the pleadings." FED. R. CIV. P. 12(d). "[D]ocuments incorporated into the complaint by reference" are part of the pleadings and can be considered at the motion to dismiss stage. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

Plaintiffs' expert report repeats large portions of their Second Amended Complaint verbatim. *Compare* ECF No. 41 at 7–22, *with* ECF No. 48-1 at 12–27. But the portions of the report *not* copied into the Complaint are not otherwise incorporated. *See generally* ECF No. 41. Thus, the Court cannot consider the expert report in ruling on the instant Motion to Dismiss. And because the Court's resolution of the Motion to Dismiss resolves this case, there is no need to further consider the request to seal the expert report.

*B. Body Camera Video*

Unlike the expert report, the Court *can* consider the body camera video at this stage. When video is "referred to in the plaintiff's complaint and [is] central to her claim," the Court can consider it at the motion to dismiss stage. *Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 297 (5th Cir. 2023). The body camera footage here is referenced throughout the Second Amended Complaint. For example, the Complaint includes screenshots from Defendant Bustos's body camera footage and his patrol vehicle's dash camera. ECF No. 41 at 12, 17. The footage, including footage from the other officers' body cameras, is also repeatedly referenced throughout the text of the Complaint, both explicitly and implicitly. *See, e.g., id.* at 9 ("The video shows . . ."); *id.* at 10 ("While this occurred, N[evarez] exited his car and approached the suspect vehicle on foot."); *id.* at 11 ("As N[evarez] spoke to the occupants, Officer Throgmorten arrived and approached the stopped vehicle from the rear."); *id.* at 12–14

(explaining the relative positions of the officers, Norton, and Castillo at the moment of the shooting). Thus, the videos are incorporated by reference into the Second Amended Complaint and the Court can consider them at this stage. *See Tellabs*, 551 U.S. at 322.

Because the Court can consider the video evidence, it must decide whether the evidence can be sealed. The Court "heavily disfavor[s] sealing information placed in the judicial record." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519–20 (5th Cir. 2022). Typically, courts "require information that would normally be private to become public by entering the judicial record." *Id.* at 520. There are, of course, some exceptions. *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) ("[S]ome cases involve sensitive information that, if disclosed, could endanger lives or threaten national security."). But the parties' "joint agreement" that a document should be filed under seal is *not* sufficient for the Court to allow sealing. *Id.* at 417–21. It is an *abuse of discretion* for the Court to order documents sealed without considering "the presumption in favor of the public's access to judicial records." *Id.* at 419.

To decide whether the videos can be filed under seal, the Court must weigh the public's right of access against the parties' interests in nondisclosure. *See Binh Hoa Le*, 990 F.3d at 421 ("The secrecy of judicial records, including stipulated secrecy, must be justified and weighed against the presumption of openness that can be rebutted only by compelling countervailing interests favoring nondisclosure."). The public, of course, has an interest in judicial transparency. *See id.* at 420. But that interest is somewhat lessened in this case because there is no material factual dispute about the shooting. Plaintiffs acknowledge that Norton drew a handgun and pointed it at the officers, and even that the shooting of Norton was "obviously" justified. ECF No. 41 at 12, 18. Defendants do not dispute that they changed position prior to firing on Norton, nor that one or more of those shots struck and killed

Castillo. *See generally* ECF No. 46. Because there is no material factual dispute, the Court's resolution of this matter can rely primarily on the written Complaint, which is publicly available. ECF No. 41. Thus, the public's interest in disclosure of the videos is diminished.

Plaintiffs, however, have a significant interest in nondisclosure. The videos contain sensitive, graphic images of Castillo's last moments. Redaction would not sufficiently protect the Plaintiffs' interest in nondisclosure, because the videos can be traced back to the parties who have been publicly named in this lawsuit. Thus, on the facts of this case, the Court finds the Plaintiffs' interest in nondisclosure outweighs the public's interest in disclosure of the videos, even considering the presumption in favor of disclosure. Accordingly, Plaintiffs' Motion to Seal (ECF No. 48) is **GRANTED in part**.

**II. Qualified Immunity**

Plaintiffs allege Officers Bustos and Nevarez used excessive force against Castillo in violation of her constitutional rights. ECF No. 41 at 23–24. Defendants assert the defense of qualified immunity. ECF No. 46 at 11–15.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal marks omitted). When considering a qualified immunity defense raised in a motion to dismiss, the Court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe*, 691 F.3d at 648. Qualified immunity involves a two-step inquiry: (1) "whether the officer violated a constitutional right"; and (2) "whether the right at issue was clearly established at the time of the alleged misconduct." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (Oldham, J.) (internal marks omitted). Courts can address the two qualified immunity prongs in either order. *Pearson*, 555 U.S. at 236.

### *A. Whether the Officers Violated a Constitutional Right*

The Court begins by considering whether Officers Bustos and Nevarez violated Castillo's constitutional rights. Plaintiffs allege the Officers used excessive force and violated Castillo's rights under the Fourth *and* Fourteenth Amendments. ECF No. 41 at 23–24. But the use of deadly force is a seizure, which is analyzed under the Fourth Amendment. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985). An excessive force claim implicating the Fourth Amendment "*must* . . . be judged by reference to the specific constitutional standard which governs that right." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (emphasis added); *see also Est. of Parker v. Miss. Dep't of Pub. Safety*, 140 F.4th 226, 244 (5th Cir. 2025) (finding Fourteenth Amendment excessive force claims "foreclose[d]" where the Fourth Amendment applies). Thus, the Court will analyze Plaintiffs' excessive-force claims under the Fourth Amendment.

The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable . . . seizures." U.S. CONST. amend. IV. "To state a Fourth Amendment excessive-force claim, a plaintiff must show two things: (1) a seizure occurred; and (2) the force used was unreasonable." *Est. of Parker*, 140 F.4th at 238.

The use of deadly force is a seizure, but a Fourth Amendment seizure only occurs "when there is a governmental termination of freedom of movement *through means intentionally applied*." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989). Plaintiffs allege Castillo was seized under the Fourth Amendment. ECF No. 41 at 5. Because Defendants seem to concede the Officers seized Castillo (ECF No. 46 at 11–15), the Court assumes without deciding a seizure occurred. Thus, the only question remaining is whether the use of force was reasonable.

To establish the Officers' use of force was unreasonable, Plaintiffs must show "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (citation omitted). Castillo's death satisfies the injury element. Therefore, the Court focuses on the second and third elements. The inquiries into whether a use of force was "clearly excessive" or "clearly unreasonable" are intertwined. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017).

"Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on the facts and circumstances of each particular case." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (internal marks omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. The inquiry in excessive force cases is objective, not subjective. *Id.* at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."). And the "inquiry into the reasonableness of police force requires analyzing the totality of the circumstances." *Barnes v. Felix*, 605 U.S. 73, 80–82 (2025) (rejecting the "moment-of threat rule" previously applied in this Circuit). Factors to consider include (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest." *Graham*, 490 U.S. at 396.

Under these standards, the Court concludes the Officers' use of force was objectively reasonable and not clearly excessive. Both the *Graham* factors and precedent confirm this conclusion.

The first *Graham* factor is the severity of the crime at issue and favors the Defendants, but only slightly. Bustos initiated the traffic stop because the vehicle displayed a mismatched license plate. ECF No. 41 at 9. This is a relatively minor violation, and not one inherently corresponding to violence, which favors Plaintiffs on this factor. However, the stop quickly escalated *before* the shooting. Norton initially provided a false name, which raised Bustos's suspicion after he ran a search on "Kayden Cortez." *Id.* at 9–10. Upon further questioning, Norton revealed his real name and told Bustos he may have outstanding warrants. *Id.* at 11–12. As Plaintiffs acknowledge in their Second Amended Complaint, this "would reasonably place an officer on higher alert that perhaps [Norton] represented a flight risk *or other unseen dangers*." *Id.* at 12 (emphasis added). This escalation favors Defendants on the first *Graham* factor, and in total, the Court finds the factor slightly favors Defendants.

The second and third *Graham* factors—immediate safety threat and resisting arrest—strongly favor Defendants. When Norton exited the vehicle, he "immediately reached under his shirt and drew a handgun and pointed it at the officers" with his finger on the trigger. ECF No. 41 at 12. This obviously presented an immediate safety threat to Officers Bustos and Nevarez, other officers on the scene, and other members of the public who may have been nearby. Drawing a gun is also clearly resisting the Officers. Thus, the three *Graham* factors all point to the same conclusion—the Officers' use of force was not objectively unreasonable.

Of course, Plaintiffs *acknowledge* the Officers' use of force was reasonable as to Norton. ECF No. 41 at 18 ("[S]hooting Norton was obviously not unconstitutional."). They argue that nonetheless, the Officers "had a [c]onstitutional obligation to protect [Castillo]

from injury or harm." ECF No. 41 at 18. But in a similar case, the Fifth Circuit confirmed that a reasonable use of force against an active threat is still reasonable even when an innocent third party is fatally injured in the process. In *Estate of Parker v. Mississippi Department of Public Safety*, a suspect held his three-month-old son in his arms while firing on law enforcement. 140 F.4th at 232–33. Officers opened fire, and one fatally shot the baby. *Id.* After considering precedent and the *Graham* factors, the Fifth Circuit held the use of force was constitutionally reasonable, in part because "[t]o hold otherwise would risk discouraging officers from taking decisive action in active-shooter situations." *Id.* at 241–42. Similarly here, while the shooting of Castillo is tragic, the Court cannot find it was constitutionally unreasonable given the active threat presented by Norton.

Plaintiffs emphasize that Bustos and Nevarez changed position immediately before firing at Norton in a way that put Castillo in greater danger. *See* ECF No. 41 at 12–18. But qualified immunity is not defeated simply because the Officers could have responded differently. *See Mullenix v. Luna*, 577 U.S. 7, 15–16 (2015). The decision to change positions had to be made quickly, with multiple people in and around the car. ECF No. 41 at 11–14. The Court must avoid analyzing the situation and Officers' choices "with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Here, even if the decision to change position was a mistake, the Court cannot find it was an unconstitutionally unreasonable mistake.[3]

For the reasons above, the Plaintiffs' asserted facts, accepted as true, do not amount to an unconstitutional violation of the Fourth Amendment. Accordingly, the Officers are entitled to qualified immunity.

[3] The fact that officers were standing on the other side of the vehicle further buttresses the reasonableness of the Defendant Officers' decision to change positions before firing on Norton. *See* Pl. Ex. 3 at 32:11–22 ("In the grand scheme of things, looking back on it, at least . . . we didn't have crossfire [with] people on both sides of the vehicle.").

*B. Whether the Right at Issue was Clearly Established*

Although the Court concluded at prong one of the qualified immunity inquiry that the Officers did not violate a constitutional right, it considers prong two in the alternative. Even if the Plaintiffs pled facts amounting to a showing that the Officers used excessive force against Castillo, they have not shown the right was clearly established at the time. Thus, the Officers are entitled to qualified immunity under prong two as well.

To overcome a qualified immunity defense, in addition to showing the Defendants violated the constitution, Plaintiffs must show "the right at issue was clearly established at the time of the alleged misconduct." *Morrow*, 917 F.3d at 874 (internal marks omitted); *see also Mullenix*, 577 U.S. at 11 ("The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (internal marks omitted)). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11 (internal marks omitted).

The Plaintiffs' burden is heavy: "A right is clearly established only if relevant precedent 'ha[s] placed the . . . constitutional question beyond debate.'" *Morrow*, 917 F.3d at 874 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Supreme Court's cases "teem with warnings about the difficulty of placing a question beyond debate." *Id.*; *see also generally, e.g., Ziglar v. Abbasi*, 582 U.S. 120 (2017); Aaron L. Nielson & Christopher J. Walker, *A Qualified Defense of Qualified Immunity*, 93 NOTRE DAME L. REV. 1853 (2018). While Plaintiffs do not need to point to a case "directly on point," "existing precedent must have placed the . . . constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. The Supreme Court has repeatedly warned lower courts "not to define clearly established law at

a high level of generality." *Id.* at 742 ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.").

If that didn't set the bar high enough, "overcoming qualified immunity is especially difficult in excessive-force cases." *Morrow*, 917 F.3d at 876. "This 'is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue.'" *Id.* (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)). And because "excessive-force claims often turn on 'split-second decisions' to use lethal force," the law must be "so clearly established that—in the blink of an eye—every reasonable officer would know it immediately." *Id.* (quoting *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 582 (5th Cir. 2009) (citation modified)).

Plaintiffs cannot meet the high bar of establishing that the Officers' conduct clearly violated Castillo's constitutional rights. The cases Plaintiffs cite either state the law at a high level of generality or are not factually similar to this case.

In their complaint, Plaintiffs cite *Tennessee v. Garner* and *Graham v. Connor* as providing clearly established law to overcome the Officers' qualified immunity defense. ECF No. 41 at 19–21. But these cases discuss the relevant analysis only at a high level. *See Garner*, 471 U.S. at 11 (use of deadly force absent an immediate threat is prohibited); *Graham*, 490 U.S. at 396 (outlining factors to be considered when assessing reasonableness under the Fourth Amendment). Neither case analyzed a situation in which a justified use of force harmed a third party, so they cannot supply the clearly established law in this case. *See Ashcroft*, 563 U.S. at 742 (warning lower courts "not to define clearly established law at a

high level of generality"); *see also Hanks*, 853 F.3d at 747 (*Graham* can only supply the clearly established law in "an obvious case").

In their response to the Motion to Dismiss, Plaintiffs primarily rely on an unreported district court case, *Tijerina v. City of San Antonio*, No. 5:23-CV-916, 2024 WL 626620 (W.D. Tex. Feb. 1, 2024). ECF No. 47 at 8–9. But "nonprecedential opinions do not establish any binding law for the circuit," so "they cannot be the source of clearly established law for qualified immunity analysis." *Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019). Moreover, *Tijerina* was decided *after* the facts of the case at hand, so it cannot supply "clearly established" law for qualified immunity purposes. *See City of Tahlequah, Okla. v. Bond*, 595 U.S. 9, 13 (2021). But even considering *Tijerina* on the merits, it is not factually similar enough to this case to provide clearly established law. *Tijerina* involved a police shooting in which an innocent third party was struck after a two-and-a-half-hour stand-off. 2024 WL 626620, at *1. Here, the Officers had to make a life-or-death decision in mere seconds, providing considerably less time to consider danger to third parties.

The cases relied on in *Tijerina* fare no better. In *Coon v. Ledbetter*, officers fired a shot into a trailer after a fleeing suspect fled into the trailer. 780 F.2d 1158, 1159–60 (5th Cir. 1986). While the suspect was armed and had previously fired his shotgun—potentially in the general direction of the officers—he was not an active threat to the officers when the shot was fired into the trailer. *Id.* And in *Petta v. Rivera*, an officer stopped a suspect for speeding. 143 F.3d 895, 897 (5th Cir. 1998). After an argument in which the suspect did not physically threaten the officer, the officer lost his temper, pulled a handgun, and shot it at the car as the suspect fled in a panic. *Id.* at 897–98. In both cases, the officers shot while not facing an active threat, making them too dissimilar to supply the "clearly established" law here.

Plaintiffs' final case, *Grandstaff v. City of Borger*, is also too dissimilar. In that case, after a high-speed chase, officers fired indiscriminately and intentionally into a *separate* vehicle whose driver posed no threat to the officers. 767 F.2d 161, 165 (5th Cir. 1985).

Plaintiffs point to no other cases showing the Officers' conduct violated Castillo's clearly established rights. Accordingly, they have failed to plead facts sufficient to overcome the Officers' qualified immunity defense, so the Officers are entitled to qualified immunity. The constitutional claims against Bustos and Nevarez are **DISMISSED**.

**III. Other Claims**

*A. Claims Against the City of Amarillo*

Plaintiffs withdrew their claims against the City of Amarillo in their response to the Motion to Dismiss. *See* ECF No. 47 at 2 ("Plaintiffs withdraw their claims against the City of Amarillo since the fulcrum of this case is the issue of qualified immunity."). Accordingly, Plaintiffs' claims against the City of Amarillo are **DISMISSED**.

*B. Claims Against Unknown Defendants*

Plaintiffs Second Amended Complaint lists as Defendants "Unknown Police Officers" and "Unknown Entities." ECF No. 41 at 1. Plaintiffs did not plead any facts showing that any Unknown Police Officers violated Castillo's clearly established constitutional rights. *See generally* ECF No. 41. Plaintiffs' Second Amended Complaint alleges only that the named Officer Defendants—Bustos and Nevarez—seized Castillo when they shot at Norton. *Id.* The Complaint does not allege any other seizure or other violation of Castillo's clearly established constitutional rights by any other officers. *Id.* Because the Complaint does not allege any constitutional violations as to the Unknown Police Officers, they are entitled to qualified immunity. *See Backe*, 691 F.3d at 648. The constitutional claims against the Unknown Police Officers are **DISMISSED**.

Plaintiffs' Second Amended Complaint also does not allege any facts that establish any plausible claim for relief against any "Unknown Entities." *See generally* ECF No. 41. Accordingly, the claims against the Unknown Entities are **DISMISSED**.

*C. State Law Claims*

Because the Court dismissed the Plaintiffs' federal law claims before trial, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see also Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims."). Thus, Plaintiffs' state law claims are **DISMISSED**.

**IV. Leave to Amend**

Plaintiffs request leave to further amend their Complaint. ECF No. 47 at 11. That request is **DENIED**. "[L]eave to amend properly may be denied when the party seeking leave has repeatedly failed to cure deficiencies by amendments previously allowed and when amendment would be futile." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). The Court previously provided Plaintiffs an opportunity to cure the deficiencies in their Complaint. ECF No. 40 at 14. Plaintiffs failed to cure the deficiencies. Moreover, further amendment would be futile. The Court reviewed body camera footage provided by the Plaintiffs. Because the officers did not violate any clearly established constitutional right, no pleading based on the events shown in the videos will state a claim that can overcome the Officers' qualified immunity.

## CONCLUSION

For the reasons above, the Defendant Officers are entitled to qualified immunity. Accordingly, Defendants' Motion to Dismiss (ECF No. 45) is **GRANTED**. Additionally, Plaintiffs' Motion to Seal (ECF No. 48) is **GRANTED in part**.[4] The remaining outstanding motions (ECF Nos. 53, 54) are **DENIED as moot**.[5] This case is **DISMISSED**.

**SO ORDERED.**

September 16, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

[4] The Court discerns no reason that the Motion to Seal itself should remain under seal, so the United States District Clerk is **DIRECTED** to unseal the Plaintiffs' Motion to Seal (ECF No. 48). But because the Court did not consider the other exhibit subject to the Motion to Seal (ECF No. 48-1) it should remain sealed. The flash drive submitted under seal (ECF No. 49) should remain sealed.

[5] The exhibits Defendants submitted in conjunction with their Motion to Seal (ECF No. 52) should remain sealed.